UNITED STATES, Appellant

v.

WILBERT J. MEYER, Quartermaster Third Class,
U. S. Coast Guard, Appellee

1 USCMA 164, 2 CMR 70

Decided February 8, 1952

LT. Albert S. Frevola, USCG, for Appellant.
CDR. Frederick K. Arzt, USCG, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

We have this case before us on certificate from the General Counsel, Department of the Treasury, for the United States Coast Guard, in accordance with the provisions of the Uniform Code of Military Justice, Article 67(b) (2), 50 USCA § 654. The accused, Meyer, QM3, United States Coast Guard, was tried by general court-martial held in Cleveland, Ohio, on May 16, 1951, for the offense of desertion in violation of legislation relating to the Coast Guard, 14 USCA § 143. It was alleged that the accused deserted the service of the United States Coast Guard on April 24, 1948, and remained absent in desertion until he was apprehended at Bucyrus, Ohio, on April 30, 1951. He was found guilty as charged and sentenced to dishonorable discharge and imprisonment for one year, together with the usual accessories. The convening authority approved the findings and sentence, and the record was thereafter considered by a board of review of the service concerned. Before this tribunal it was argued that the applicable statute of limitations operated to bar trial for the offense of desertion. However, on August 10, 1951, the board of review held that trial was not barred and affirmed the conviction. The correctness of this ruling has been certified to us for determination.

The following information, some of which has appeared earlier herein, is relevant to any solution of the problem before us. The record indicates that the accused enlisted in the Coast Guard on December 22, 1947, for a period of three years. He absented himself without leave from that service on April 24, 1948, and was in a status of unauthorized absence at the time of the expiration of his term of enlistment on December 21, 1950. Apprehension took place on April 30, 1951, and trial was had on May 16, 1951.

Although normally a separate division of the armed forces, the United States Coast Guard operates as a part of the Navy during time of war or when the President directs. 14 USCA §§ 1, 3. Naturally, during the recent war it functioned under Naval auspices. However, in December 1945, the President acted to return the Guard to the Treasury Department effective with the beginning of the following year. Executive Order No. 9666, December 28, 1945. Consequently, at the time the events recounted herein transpired, including the trial of the accused, the agency was operating under the Treasury as a separate service. In providing for the administration of military justice in the Coast Guard, Congress used the following language found in 14 USCA § 143:

"Such courts shall consist of not less than three commissioned officers of the Coast Guard, and *shall, under rules approved by the Secretary of the Treasury, be governed in their organization and procedure substantially in accordance with naval courts,* but the jurisdiction of Coast Guard courts shall be limited to the following offenses, namely: . . ." (Italics supplied)

Acting under this grant of authority, the Secretary of the Treasury provided a statute of limitations applicable to offenses committed by Coast Guard personnel when tried by Coast Guard courts. This regulation appears as Article 29, Coast Guard Courts and Boards, 1935, and reads as follows:

"No person shall be tried or punished by a Coast Guard court for any offense committed more than 2 years before the issuing of the order for such trial or punishment, unless by reason of having absented himself from the United States, or of some other manifest impediment, he shall not have been amenable to justice within that period in which case the time of his absence or other impediment shall be excluded in computing the period of limitation. *In desertion cases, the period of limitation shall not begin until the end of the term for which the person involved was enlisted in the service.*" (Italics supplied)

Since Congress had specifically granted to the Secretary of the Treasury authority to prescribe rules ▮▮ of procedure for Coast Guard courts, and since both appellate government and defense counsel are in agreement that a statute of limitations is a rule of procedure for this purpose, it appears to have been within the Secretary's power to establish a period of limitation on the prosecution of Coast Guard offenses. If this regulation supplied by him is to be regarded as applicable to the instant case, it is clear that the board of review did not err in affirming the conviction, for the prescriptive period began to run only on the termination of the accused's enlistment—December 21, 1950—and thus had not expired at the time of trial—May 16, 1951. However, appellate defense counsel has argued ▮▮ that the limitation provision exceeds the power delegated to the Secretary by Congress in that it is not "substantially in accord with naval courts" as required by the grant. The Articles for the Government of the Navy, 34 USCA § 1200, Articles 61 and 62, constitute the related rules operative in that service and provide as follows:

"Article 61. Limitation of trials; offenses in general. No person shall be tried by court-martial or otherwise punished for any offense, except as provided in the following article, which appears to have been committed more than two years before the issuing of the order for such trial or punishment, unless by reason of having absented himself, or of some other manifest impediment he shall not have been amenable to justice within that period.

"Article 62. Desertion in time of peace. No person shall be tried by court-martial or otherwise punished for desertion in time of peace committed more than two years before the issuing of the order for such trial or punishment, unless he shall meanwhile have absented himself from the United States, or by reason of some other manifest impediment shall not have been amenable to justice within that period, in which case the time of his absence shall be excluded in computing the period of the limitation: Provided, That said limitation shall not begin until the end of the term for which said person was enlisted in the service."

It will be noted that the only relevant difference between the Coast Guard article and the similar provisions contained in the Articles for the Government of the Navy is that under the latter the statute begins to run from the expiration of the enlistment term in the case of peacetime desertion only, whereas the comparable rule of the Coast Guard applies to desertion generally. It is the position of appellate defense counsel that this difference is material and significant; that the Secretary's regulation, having been prescribed in excess of authority, is without legal effect; and that the Navy rule must be relied on by assimilation to provide a period of limitation for Coast Guard offenses. We cannot accept this view. In our opinion the Coast Guard provision in this particular is "substantially in accordance" with the rule established for use in Naval courts-martial. Actually such minor difference as exists appears to us to be an entirely logical one. Since, unlike the other services, the Coast Guard performs continuous and exigent peacetime functions, and operates as a general thing under the Treasury Department in time of peace only, it is but natural and appropriate that the Secretary should pattern his

prescriptive period—normally used other than in wartime only—on the Navy's peacetime regulation. Certainly the Guard's usual functions and normal status suggest—if they do not demand —this approach to the problem. It is apparent that Congress sought at the time it adopted the legislation authorizing the Secretary's regulation, at least, to recognize the presence of service dissimilarities when it demanded only substantial accordance in the area of court-martial organization and procedure. Had there been no intent to manifest such recognition, it would have been a comparatively simple matter to have directed without qualification or reservation that Coast Guard law administration conform fully to that of the Navy. This was not done. Moreover, it cannot be said that the Secretary's action in the premises was without basis in discriminating reason. It follows from what has been said that the Coast Guard limitation regulation is not a nullity and is valid as against the defense argument mentioned. As applied to the instant case this results in a determination that the period of limitation had not expired as to the offense of the accused at the time of trial.

Assuming, however, the correctness of the defense position in this particular—and for a foundational purpose in dealing later herein with a further defense argument—the question arises whether the desertion we are concerned with here occurred in time of peace or in time of war. If in time of peace, Article 62, Articles for the Government of the Navy, supra, applies, whereas, if in time of war, the problem's solution is to be determined by Article 61. We shall now approach this aspect of the problem.

It is universally agreed that the termination of hostilities in 1945 did not end the existing state of war for all purposes. A state of war may be concluded by treaty, legislation, or Presidential proclamation. Ludecke v. Watkins, 335 US 160. On July 25, 1947, Congress by Joint Resolution terminated the war for certain purposes and in relation to designated statutes. Public Law 239, 80th Cong, 1st Sess, 61 Stat 449. The Attorney General of the United States noted that "the field with which the joint resolution purports to deal is limited, and is, as it were, carved out of the whole field of a state of war existing for all purposes." 32 Op Atty Gen 505, 509–10. Certain portions of this Resolution, pertinent to our decision here, may be noted. By section 3 Congress specifically terminated the war as of July 25, 1947, for the purpose of Article of War 58, 10 USCA § 1530, providing the death penalty for desertion in time of war. In the same section the following additional legislation was specified with like effect: Article of War 39, 10 USCA § 1510, providing that wartime desertion should be subject to no period of limitation; Article of War 48, 10 USCA § 1519, which inter alia dispensed with Presidential confirmation of the death sentence for desertion committed in time of war and other named offenses; and Article of War 59, 10 USCA § 1531, which provided the death penalty in time for war for persuading, advising, or assisting another to desert. In addition, Article 4, Articles for the Government of the Navy, supra, was mentioned and the war terminated as to the following paragraphs thereof: Paragraph Sixth, providing the death penalty for wartime desertion; Paragraph Seventh, providing the death penalty for specified offenses, including wartime enticement to desert; and Paragraph Fourteenth, providing the death penalty for desertion of one's station or duty in battle or enticement to this offense.

Numerous other Articles of War dealing with wartime law administration and comparable Articles for the Government of the Navy, not of direct importance here, were included in the termination Resolution. It appears, however, as we have been told forcefully by appellate defense counsel, that the legislation failed to enumerate specifically Articles 61 and 62, Articles for the Government of the Navy, supra,—those setting up the periods of limitation for offenses committed during wartime and for desertion in time of peace. Invoking the principle inclusio unius est exclusio alterius, appellate defense counsel has argued that for the purpose

of limitation in the Naval service there has been no termination of the recent war. In other words, that at the time of the commission of Meyer's offense and at his trial there was no lengthened prescriptive period applicable to desertion in time of peace.

Testing this argument requires that we weigh against the de facto omission of Articles 61 and 62 from the terms of Public Law 239, supra, the persuasive suggestion arising from all four corners of the Resolution under examination that Congress intended to bring to an end the recent conflict as of July 25, 1947, for all purposes having to do with military law administration in the several services. Certainly the two mentioned Articles were not included in the termination legislation. Yet, on the other hand, the conclusion is inescapable that its manifest purpose was to draw a line between wartime and peacetime eras in most areas of military discipline, and to abrogate legislative provisions operative therein related to a period of hostilities and having their rationale in it. This inference is especially compelling as applied to the crime of desertion, for in at least seven instances mentioned earlier in these paragraphs this offense, as denounced in both the Articles of War and the Articles for the Government of the Navy, is the subject of action in Public Law 239 looking to wartime conclusion. To adopt the defense argument that the late war was officially terminated only as to the Articles of War or the Articles for the Government of the Navy specifically enumerated would lead logically to the result that Navy desertion during the period dealt with here, must be regarded as peacetime desertion for purposes of punishment but wartime desertion as regards the applicable statute of limitations. We cannot suppose that Congress intended to produce so anomalous a situation. We are of the opinion, in short, that the omission of Articles 61 and 62 from Public Law 239 was the product of redactive oversight—doubtless due principally to the failure of these Articles, the only ones dealing with Naval periods of limitation, to refer expressly and distinctly to desertion in time of war. It is to be observed

in this connection that the wartime nature of the military disciplinary legislation expressly designated in the terminative Joint Resolution is in every case obvious and explicit, and in most, if not all, instances is exhibited through the specific use of such phrases as "in time of war," "in time of battle," "in the face of the enemy," or words to this clear effect. It may certainly be argued with plausibility that the fair intendment of the Resolution was to terminate the war for all purposes having to do with punitive provisions of the Articles of War and the Articles for the Government of the Navy—although we express no opinion on this broader question. However, we entertain no doubt whatever of the Resolution's intent to do so as regards the crime of desertion in all of the armed forces, including the United States Coast Guard. This being so, it would follow that any desertion committed during the period under consideration here must be regarded as peacetime desertion for the purposes of Articles 61 and 62.

Appellate counsel for the defense has, however, presented a further argument. Having earlier established similar provisions for both the Army and the Navy, in August 1949, Congress itself provided a statute of limitations for application to Coast Guard offenses. 14 USCA § 568, 63 Stat 542. As noted in House Report No. 557, this new prescriptive legislation follows closely Articles 61 and 62, Articles for the Government of the Navy. It reads as follows:

"(a) Except as provided in this section, no person shall be tried by a Coast Guard court or otherwise punished for any offense which appears to have been committed more than two years before the issuance of the order for such trial or punishment, unless by reason of having absented himself or of some other manifest impediment he shall not have been amenable to justice within that period.

"(b) No person shall be tried by a Coast Guard court or otherwise punished for desertion in time of

peace committed more than two years before the issuance of the order for such trial or punishment, unless he shall meanwhile have absented himself from the United States or by reason of some other manifest impediment shall not have been amenable to justice within that period, in which case the time of his absence shall be excluded in computing the period of the limitation. In no event shall the period of limitation begin until the end of the term for which such person was enlisted in the service."

It is the contention of defense counsel that this statute may and should be applied retroactively to include the offense for which the accused, Meyer, was here tried. At this point we note the presence of substantial disagreement among the authorities on the question of the propriety of the retroactive application of a statute of limitations. However, assuming without deciding the soundness of the defense position regarding retroactivity, the question remains here—as it did when we considered the possible application of the Navy's prescriptive Articles to the facts of the present case—whether the desertion we are concerned with occurred in time of peace or in time of war. If in time of peace, section 568b of the legislation quoted last above is applicable, thus bringing the trial in the case at bar within the limitation period. On the other hand, if in time of war, a contrary determination could be made. For reasons identical with those producing our conclusion as to the inapplicability of Articles 61 and 62, Articles for the Government of the Navy, supra, we hold that Meyer's was a peacetime desertion, and that his amenability to prosecution must be measured by the longer period of limitation. This seems especially apparent in the present case, not only on basis of the principle of assimilation urged in other connections by appellate defense counsel, but particularly because the Coast Guard had been previously returned by the President to its peacetime status as an integral part of the Treasury Department. Executive Order No. 9666, supra. Certainly the national legislature could not

have wished to provide one prescriptive period for desertion from the Coast Guard and another and longer one for the same crime when committed by Navy personnel—in the face of compelling logical considerations pointing in an exactly opposite direction. Nor can we believe, as has been suggested earlier, that Congress intended to produce a situation in which for some purposes at least Navy and Coast Guard desertions must be regarded as having taken place in time of war, whereas the same offense, if committed by Army or Air Force personnel, would be treated as peacetime desertion for all purposes.

We have not left out of account in our consideration of the case at bar that mention has been made of the possibility of retroactive application to facts of the present case of the provisions of the Uniform Code of Military Justice, Article 43 (b), 50 USCA § 618. Clearly this section has no application to our situation. Since the trial here was held and fully completed on May 16, 1951, prior to the effective date of the Uniform Code, Article 43 (b) cannot operate to bar prosecution in this case. See United States v. Sonnenschein, (No. 8), 1 USCMA 64, 1 CMR 64, decided November 27, 1951.

We conclude, therefore, that the Coast Guard board of review did not err in its holding in the accused's case that trial was not barred by any applicable statute of limitations. We believe that the regulation of the Secretary of the Treasury, Article 29, Coast Guard Courts and Boards, 1935, was applicable here, and it is conceded that by its terms prosecution for the offense charged here was not barred. In summary—and responsive to the excellently presented arguments of appellate defense counsel—the following should be said: Assuming the correctness of these arguments to the effect that the Navy Articles, Articles for the Government of the Navy, Articles 61 and 62, supra, should be applied here, we conclude that the accused's trial was not barred for the reason that he was tried and found guilty of peacetime desertion. Assuming likewise the correctness of

**169**

these arguments to the effect that the 1949 Coast Guard legislative statute of limitations, 14 USCA § 568, should be applied retroactively—a point we need not decide here—the same conclusion is reached and for the same reason. In addition we believe that the Uniform Code of Military Justice, Article 43(b), supra, has no application here. Diligence of counsel has not brought to our attention any other regulation or legislation barring trial in this case and we are aware of none.

Accordingly the General Counsel's certified question is answered as above and the decision of the board of review affirmed.

Chief Judge QUINN and Judge LATIMER concur.