UNITED STATES, Appellee

v.

CLIFFORD E. NICHOLS, Seaman, U. S. Coast Guard, Appellant

2 USCMA 27, 6 CMR 27

28

No. 302

Decided October 14, 1952

Lt. Albert S. Frevola, USCG, for Appellant.
Cdr. Frederick K. Arzt, USCG, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

The accused, a member of the United States Coast Guard, was tried by general court-martial at San Francisco, California, on July 6, 1951, and was found guilty of desertion from July 27, 1947, to June 7, 1951, a period of about four years. He was sentenced to a dishonorable discharge and confinement for one year with all accessories. The convening authority approved and the board of review affirmed. The case was certified to us by the General Counsel for the Department of the Treasury on six issues.

The record discloses that the accused enlisted in the Coast Guard on February 7, 1947, for a three-year period terminating on February 6, 1950. He was reported absent without leave on July 27, 1947, from the Coast Guard Light and Lifeboat Station, Cleveland, Ohio, and was apprehended June 7, 1951, at Hamilton Air Force Base, Hamilton, California, where he was serving in the United States Air Force as a Master Sergeant. On March 10, 1949, while the whereabouts of the accused was still unknown, Admiral Farley signed a charge of desertion against this accused and ordered him tried by a general court-martial then in existence. Following his apprehension in 1951, the accused was tried on amended charges by a general court-martial convened under the Uniform Code of Military Justice. The defense moved to dismiss the charge on the ground it was barred by the statute of limitations. The first question certified seeks a determination of whether the law officer erred in overruling the motion.

The statute of limitations applicable to offenses committed by Coast Guard personnel prior to the effective date of the Code is embodied in Article 29, Coast Guard Courts and Boards, 1935, which is as follows:

"No person shall be tried or punished by a Coast Guard court for *any offense committed more than 2 years* before the issuing of the order for such *trial or punishment,* unless by reason of having absented himself from the United States, or of some other manifest impediment, he shall not have been amenable to justice within that period in which case the time of his absence or other impediment shall be excluded in computing the period of limitations (USC, title 34, sec 1200, art 61). *In desertion cases the period of limitation shall not begin until the end of the term for which the person involved was enlisted in the service* (USC, title 34, sec 1200, art 62)." [Emphasis supplied]

Applying the statutory limitation of that paragraph to the instant case, unless tolled by an order for trial, the statute of limitations began to run on February 6, 1950, the date of the termination of accused's enlistment, and ran for a period of two years from that date. See United States v. Meyer (No 84), 1 USCMA 164, 2 CMR 70, decided February 8, 1952. This period had not expired by May 31, 1951, the effective date of the Uniform Code of Military Justice, and Paragraph 68(c) of the Manual for Courts-Martial, United States, 1951, provides that if the statute of limitations has not run prior to that date, the running of the statute shall be governed by the provisions of Article 43 of the Code, 50 USC § 618. However, the Article and the Manual provisions must be interpreted in the light of other portions of the Code and the Executive Order which promulgated the Manual.

We first direct attention to the fact that we are here concerned with peacetime desertion, since the accused first absented himself on July 27, 1947. For purposes of the crime of desertion, Congress terminated the war on July 25, 1947. United States v. Meyer, supra. Subdivision (b) of Article 43, supra, is therefore to be considered and it provides as follows:

"Except as otherwise provided in this article, a person charged with deser-

30

tion in time of peace or any of the offenses punishable under articles 119 through 132 inclusive shall not be liable to be tried by court-martial if the offense was committed more than three years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command."

As already noted, Admiral Farley ordered the accused tried by general court-martial on March 10, 1949. That action did, under then existing law, effectively toll the statute. Coast Guard Courts and Boards, Article 29, supra. The problem before us is whether this tolling action must be given continued effectiveness under the Uniform Code of Military Justice and the Executive Order. If it remained effective and tolled the statute, then the motion to dismiss was properly denied, otherwise not, as more than three years elapsed between the original desertion and the time of the apprehension.

In considering a newly enacted statute, such as this, which authorizes the President to promulgate rules and regulations to further its purposes, effect must be given to the saving clauses contained in the law and the Executive Order. Sutherland, Statutory Construction, 3d Edition, Paragraph 2047, dealing with the effect of a general saving clause on actions which were commenced prior to the effective date of an amendment, states the rule to be:

"Where a statute is repealed, a general saving statute operates to save any substantive right of a private nature, liability, right of action, penalty, forfeiture, or offense which has accrued under the repealed statute. Consequently, any action predicated upon the repealed statute may be commenced and prosecuted to a conclusion under the provisions of the repealed act. Likewise, any suit, proceeding, or prosecution which is commenced prior to the repeal of the statute which forms the basis for the action, may proceed to its conclusion without regard to the repeal. . . ."

We have previously discussed the saving clauses set forth in the Code and the Executive Order. In United States v. Merritt (No. 53), 1 USCMA 56, 1 CMR 56, decided November 20, 1951, we stated this in respect to the act:

" 'The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability . . . .'

"What we consider the saving section of the Act of May 5, 1950, does not provide for the release or extinguishment of any penalty, forfeiture or liability incurred under previous statutes or regulations. On the contrary, it is made crystal clear that Congress did not intend any such result. Section 4 of Part b, of the Act provides as follows:

" 'All offenses committed and all penalties, forfeitures, fines, or liability incurred prior to the effective date of this Act under any law embraced in or modified, changed, or repealed by this Act may be prosecuted, punished, and enforced, and action thereon may be completed, in the same manner and with the same effect as if this Act had not been passed.'

"Congress, having declared its intent that penalties, forfeitures, fines, and liabilities provided for under the old act could be enforced, set about to prescribe the method by which this could be accomplished. Article 36 of the Act provides that the President may set the pattern for the new procedure. . . ."

The President, in prescribing for the change-over from the old to the new procedure, considered pending actions and specifically provided that actions begun prior to May 31, 1951, could be completed in the same manner and with the same effect as if the Manual had not been promulgated. His Executive Order No. 10214, February 8, 1951, is in part as follows:

". . . That nothing contained in this manual shall be construed to invalidate any investigation, trial in which arraignment has been had, or other action begun prior to May 31, 1951; and any investigation, trial, or action so begun may be completed in accordance with the provisions of the applicable laws, Executive Orders, and regulations pertaining to the various armed forces in the same manner and with the same effect as if this manual had not been prescribed. . . ."

We thus have Congress declaring its intent that all offenses committed prior to the effective date of the Code could be prosecuted in the same manner and with the same effect as if the act had not been passed, and the President preserving all actions begun in accordance with regulations then in force in the armed services.

In United States v. Merritt, supra, and United States v. Sonnenschein (No. 8), 1 USCMA 64, 1 CMR 64, decided November 27, 1951, we concluded the Executive Order divided military procedure in severable phases, and we held that if one divisible step had been completed under previous regulations, it was valid and effective. In Merritt the Court stated as follows:

"If we give full force and meaning to the words of the last quoted proviso, the manner in which the President attempted to consolidate the two systems becomes clear. We read the two provisos to mean this: That the trial and review procedure for all cases shall be prescribed in the Manual, except that the new procedure shall not *invalidate* (1) any investigation which has been completed, (2) a trial in which an arraignment has been held, or (3) any other action taken prior to May 31, 1951; and, *that if either of the first two or any other independent procedural step is commenced prior to that time it can be completed under the old system.* Stated particularly, if an investigation has been held, that step has been taken and the new system shall not invalidate that much of the proceeding nor require that the offense be re-investigated; that if a trial has

reached the point of arraignment, it shall be completed under the old procedure without interference by the new; *and, that if any other severable proceeding, such as an appeal to a board of review, has been taken that particular action may be completed as provided for under the old act. In a sense, the President set a cut-off date and he declared that acts accomplished or steps taken prior to that time were validated.* He further declared that after the cut-off date the new procedure was to be controlling on those steps which had not been commenced prior to that date." [Emphasis supplied]

In United States v. Sonnenschein, supra, we were dealing with the specific phase of appellate review, but this is the language used by Judge Brosman in the opinion of the Court:

". . . . The result of these provisions, we believe, is to separate the court-martial process—using the last word in much the same sense in which it is used in the terms 'judicial process' or 'administrative process'—into successive phases or principal steps, and to permit the completion with the old system's finality of any phase initially undertaken prior to the effective date of the Act on which the new procedure is based. However, as to stages not begun by this date, the provisions of the new scheme are to apply. . . . ."

While not specifically mentioned in the two previous cases because of not being in issue, an order for trial under the previous Coast Guard regulations was a distinct and separate act which is encompassed within the phrase "any action begun." That was the manner in which actions were started and statutes of limitations tolled. The order instituted proceedings and no further action was required nor could may be taken until apprehension of the accused. If he was apprehended after the effective date of the Code, the new procedure would govern but actions instituted could be completed and the right to proceed would be unimpaired so long as three full years, uninterrupted by some tolling act, had not run.

The conclusion we reach is fortified by the discussions before the Armed Services Committees of Congress. The explanations made and the provisions adopted indicate that Congress intended to continue tolling provisions in effect, not to repeal them, and that the only change considered was in the steps to be taken by the Government to prevent the statutes from continuing to run.

Article 62 of the Articles for the Government of the Navy, 34 USC § 1200, (similar to Article 29, Coast Guard Courts and Boards), which was in effect prior to the enactment of the new Code, provided as follows:

"No person shall be tried by court-martial or otherwise *punished for desertion in time of peace committed more than two years before the issuing of the order for such trial or punishment, . . . Provided,* That said limitation shall not begin until the end of the term for which said person was enlisted in the service." [Emphasis supplied]

Article of War 39, 10 USC § 1510, provided as follows:

"Except for desertion or absence without leave committed in time of war, or for mutiny or murder, no person subject to military law shall be liable to be tried or *punished by a court-martial for any crime or offense committed more than two years before arraignment of such person; . . . .*" [Emphasis supplied]

In discussing Article 43, supra, the following statement· was made in hearings before the House Armed Services Committee, 81st Cong, 1st Sess, on HR 2498, Uniform Code of Military Justice, at page 1035:

"In unifying the system of signing of charges and specifications, pre-investigation, and so forth, we were faced with selecting a point of time when the· statute should be tolled. Should we wait until the arraignment, as in the Army, or should we do it in the fashion that the Navy does, when the charges are signed?

"We changed the Navy practice, and the signing of the charges now takes place in the beginning, not after, as it does in the Navy. We felt, observing civilian practice, that the signing of the charges, which is equivalent to the filing of the indictment—which, incidentally, in civil jurisdictions almost uniformly tolls the statute whether the defendant is present or not—we felt that, since the Navy does that, although at a different time, and the civilian jurisdictions do, we should adopt the signing of the charges as the time when the statute is tolled, whether or not the accused is present, because you may have a number of situations where you will have a full case against a person, a full amount of information and evidence, but where you may not have him.

"Now, if you have to wait until you get him in custody and arraign him, you may find yourself beyond the period of limitations. If you can toll the statute upon the signing, then, of course, it does not matter whether you have him or not at that minute. The statute is tolled; and, if you can pick him up later, at least he cannot use the statute as a defense."

We are, therefore, faced with a situation where Congress, in unifying the Code, selected with some modification, the prior Navy procedure. The departure from the old proceedings was only a change in form and not substance and in a sense was a broadening of the base for tolling the statute as the former required issuing an order for trial, by an officer qualified to convene a general court-martial, while the latter merely requires that sworn charges be filed with an officer exercising summary courts-martial jurisdiction. It would be overlooking the dictates of common sense to hold that Congress, by re-enacting the same general procedure and by expressly authorizing the President to save pending actions, intended to invalidate those proceedings which had been completed for the purpose of saving actions which would be lost if the tolling acts were swept away. We think this was clearly not the legislative intent. To so hold would be to suggest a high degree of legislative inconsistency,

namely, to provide specifically for tolling statutes by a given method and by the same law release those which were then tolled by a similar method.

It is our conclusion that by reason of the saving clauses of the Code and the Executive Order, the legal effect of the order for trial issued by Admiral Farley was not impaired by the new Act. The running of the limitations period was, therefore, tolled after that act was accomplished; and since the period the statute was tolled is not considered in computing the three-year period provided in the new Act, the trial is not barred. This holding answers the first certified question.

At the commencement of the trial, before plea was entered, defense counsel ▇▇▇▇▇▇▇ moved for a continuance based upon the grounds that he had not had sufficient time to prepare the defense. Trial counsel stated that he had no objection to the motion. Without waiting for a ruling on his motion, defense counsel stated his principal reason for desiring a continuance was that he had information the accused had been under a nervous strain and he believed psychiatric observation and examination were desirable, not for the purpose of determining whether accused was insane, but to determine whether his mental and neurological conditions were such that they should be considered as matters in extenuation or mitigation. The motion was overruled by the law officer, but he informed counsel for the accused that so long as the evidence was solely related to matters affecting the sentence, the motion could be renewed at an appropriate time. After the evidence was completed, and before the case was submitted for a finding, the motion was renewed and then withdrawn. After findings and before sentence, another motion was made but counsel for the accused again disavowed any contention that insanity was in issue. His motion, which was denied, was predicated solely upon the probability of obtaining medical testimony to establish a possible mental disturbance which the court-martial might consider.

for mitigating purposes. The second certified question asks us to determine the correctness of that ruling.

Article 40 of the Code, 50 USC § 615, provides for the granting of continuances for reasonable cause. Other than the five-day delay between service of charges and trial, which will be discussed later, the Code specifies no mandatory grounds for the granting of a continuance, and no positive and comprehensive rule can be laid down as to what matters will constitute reasonable grounds. To grant or deny the motion is a matter which involves the exercise of discretion largely influenced by the factors presented to the law officer at the time the motion is made. While we review his ruling, if raised on appeal, we are without legal authority to overturn his decision unless we find an abuse of discretion.

At the time the original motion was made there was no showing that the continuance was reasonably necessary for the purpose of obtaining and producing evidence which had any bearing on the guilt or innocence of the accused. It was admittedly limited to matters in mitigation and extenuation and it had no relationship to the merits of the controversy. Under these circumstances, the law officer's denial of the motion, before knowing whether the court-martial would return a finding of guilty, was within his discretion and we cannot hold this ruling to be unreasonable or arbitrary.

Defense counsel renewed the motion on two subsequent occasions. The first, ▇▇▇▇▇▇ which was made prior to the time the case was submitted to the court for a finding of guilty or not guilty, need not concern us as it was voluntarily withdrawn. After withdrawing that motion, and after a finding of guilty was returned, defense counsel again moved for a continuance. He however, made it clear to the law officer that this motion was predicated upon the testimony of two lay witnesses who were called to testify for the accused. As we understand the contention, counsel argue that these witnesses had testified to nervous tension, worry and mental strain on the

34

part of the accused and this necessitated that a psychiatric examination be made to place properly before the court all matters relevant to and bearing on the sentence.

We must again test this ruling to determine if the law member acted arbitrarily or capriciously. We are unable to say, as a matter of law, that the law member abused his discretion, particularly in view of the statements made concerning the reasons for and necessity of the evidence. At best, if favorable to accused, it could only be cumulative and intended to influence the severity of the sentence. Major O'Brien of the Air National Guard had testified that accused had been under his command for three months; that during that time accused's actions were erratic; that on occasion he became nervous and excited, and seemed to be under such a severe mental strain that the witness had to inform him his work was unsatisfactory and he would have to resign. In addition, Master Sergeant James Dell, also of the Air National Guard, testified that he had worked with accused for two months, and that he appeared to be unstable, hesitant and nervous. There was no contrary evidence and no issue concerning this mental condition. For that reason alone it is difficult to determine how, or in what way, accused was prejudiced.

In addition the accused took the stand and testified fully as to his mental condition and the influences which caused it. He stated he had been discharged from the Air Force in 1945, after having had 240 hours of combat flying in Iwo Jima; that this flying caused him to become nervous; that when he returned from overseas he was further upset by the breaking up of his marriage; that he did not know why he had joined the Coast Guard in 1947; that he should not have enlisted until he was more mentally readjusted because at that time he was nervous, excited and worried about his martial affairs; that when he left the Coast Guard he went to Washington, D. C., and found his former wife had remarried; that he worked at three or four different jobs, finally going to California where he met his second wife; and that he had eventually joined the Air Force Reserve in California, though he knew he would be caught as a deserter from the Coast Guard.

We believe the evidence above related fully informed the court-martial of the only mental deficiency which accused claims might be strengthened had the continuance been granted and had a medical expert been consulted. It may be that to have substantially the same evidence related to the court by an expert might conceivably result in a lesser sentence, but any such assumption must necessarily develop out of speculation and conjecture. The value of such corroborative evidence is so intangible when limited to the sentence that even were we to hold the law member erred, we would not be disposed to hold the accused's substantial rights were prejudicially affected.

Certified question No. 5 involves another claimed error arising out of the failure of the law officer to grant the original motion to continue. The question is one which we might reject because of being waived at the trial but in view of its importance we elect to announce our views for future guidance. The question requires an answer as to whether Sundays and holidays should be included in computing the five days time between service of charges and trial.

Article 35, Uniform Code of Military Justice, 50 USC § 606, provides:

". . . In time of peace no person shall, against his objection, be brought to trial before a general court-martial within a period of five days subsequent to the service of the charges upon him, or before a special court-martial within a period of three days subsequent to the service of the charges upon him."

In the present case, accused was served with a copy of the charges on June 29, 1951, and was tried on July 6, 1951. Appellate defense counsel contend that accused was entitled to a continuance under the foregoing Article as a matter of right because Sunday (July 1) and a holiday (July 4) should be excluded in computing the five-day

period. Under the Article, in time of peace, a person may not, over his objection, be tried "within" a period of five days "subsequent" to the service of charges upon him. The language of the Act excludes the initial and final days of the period. If, as contended by appellant's counsel, the Sunday and the holiday are likewise excluded, the five-day period did not elapse and accused was entitled to a continuance as a matter of right.

The Code contains no provision for eliminating holidays and Sundays in computing periods of time, and, because of the varied conditions under which courts-martial must function, we are not prepared to read into the Act something which is not expressed. In many military situations Sundays and holidays are not considered days of rest, and military functions must be carried on. There is no valid reason for excepting courts-martial or military judicial processes. However, a review of many records causes us to believe that undue emphasis is placed on speed. While the right to a speedy trial is a guarantee thrown around an accused, no man should be forced to trial if he has not had a fair opportunity to prepare his defense and in many instances five days is inadequate for proper preparation. We believe that law officers ▉ should weigh carefully the merits of a motion to continue and if it appears reasonable that it is not made on frivolous grounds or solely for delay, the request should ordinarily be granted. However, the burden still remains on the moving party to justify the motion. Counsel for accused has the responsibility to make a full and fair disclosure of the necessity for, and the nature, extent and availability of, the desired evidence. If he fails to do so, the law officer cannot be condemned.

As a working rule to be used under normal conditions, we suggest the services adopt the Federal rule. It is that when Sundays and holidays fall *within* a time period prescribed by statute or rule, they should be included unless the period is less than seven days. See Rule 45(a), Federal Rules of Criminal Procedure. Though we deem such a rule desirable under peacetime conditions, we cannot impose it as a matter of law.

There is no authority in the Code or Manual requiring the exclusion of Sundays and holidays in computing the five-day period and our suggestion neither has the force of law nor the effect of a decision. Both counsel at the trial level considered the two days should be included and this is proper under any fair construction of the Code. We, therefore, answer question No. 5 by holding that the inclusion of Sunday and the 4th of July was not erroneous.

Among the exhibits received in evidence were two identified as Exhibits 4 and 5, which were admitted over the objection of accused. The propriety of the law officer's ruling on these admissions constitutes the basis for certified questions 3 and 4. Each question seeks a determination of whether admitting into evidence a document which includes a statement that the accused was given an undesirable discharge from the Air Force was error prejudicial to him.

Appellate defense counsel have advanced a preliminary contention that the exhibits were not properly certified. A reading of the records indicates that the originals of these exhibits were in the possession of trial counsel and were available for examination by defense counsel and for comparison with the copies introduced in evidence. In view of this, it is doubtful that accused may now contend that the certifications of the documents were improper. However, we do not feel it necessary to belabor this issue since our determination of the question of prejudice disposes of both questions.

All the questioned portions of the documents purport to show that the accused, during the period of ▉ his absence from the Coast Guard, enlisted in the Air Force and upon his apprehension for the alleged desertion he was given an "undesirable discharge" by the latter. Exhibit 5 further shows that the reason for his separation was based upon his fraudulent entry into the Air Force

and concealment of his prior service. The accused, when testifying, voluntarily related all of the details shown in the exhibits and further stated that he knew he would be caught, sooner or later, because his fingerprint cards would identify him as the person absent from the Coast Guard. Cast in this background, we find no material prejudice to the accused by the admission into evidence of the contested exhibits, even assuming that such admission was erroneous. This holding disposes of questions 3 and 4.

Certified question No. 6 is stated generally: Did it constitute prejudicial error for the law officer to ▮ omit intent to abandon permanently the Coast Guard when stating the elements of the offense of desertion?

The specification of the charge contains the words "did . . . while so serving at the U. S. Coast Guard Light and Lifeboat Station, Cleveland, Ohio, desert from the said station and from the U. S. Coast Guard, and did remain a deserter until he was taken into custody." In his instructions, the law officer defined a deserter as one who "goes or remains absent from his place of service, organization, or place of duty with intent to remain away therefrom permanently." Appellate defense counsel contend that the instructions do not define the act charged in the specification because they fail to include a specific instruction that the court must find that accused's absence was from the U. S. Coast Guard and not merely from his place of duty.

Excluding any consideration of a waiver by the failure of defense counsel to request clarification of the instructions as given, we hold they do not constitute prejudicial error in the light of this record. The evidence shows that accused left the Coast Guard in July of 1947, and remained absent for one month less than four years. He had joined another military service, and was apprehended. We do not see how the court-martial members could have been so misled by the instructions as to base their finding upon a conclusion that accused deserted only his unit and not the U. S. Coast Guard. An instruction which requires the court-martial to find absence from his place of service, organization, or place of duty for a period of four years, when applied to the circumstances shown by this record, reasonably includes a finding of an intent to remain away permanently from the service. We hold that the instruction was sufficient and question No. 6 is, therefore, answered in the negative.

The certified questions having been answered adversely to the contentions of accused, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.