UNITED STATES, Appellee,

v.

James L. JOHNSON, Private, U. S. Marine Corps, Appellant.

No. 38,347.

NCM 79–1195.

U. S. Court of Military Appeals.

Jan. 26, 1981.

For Appellant: *Captain Joseph M. Poirier, USMC* (argued); *Commander S. Gaeta, Jr., JAGC, USN, Lieutenant Larry A. McCullough, JAGC, USN* (on brief).

For Appellee: *Lieutenant Commander John C. Vinson, JAGC, USN* (argued); *Commander T. C. Watson, JAGC, USN, Captain John P. Hertel, USMC* (on brief).

OPINION

COOK, Judge:

In *United States v. Banks*, 7 M.J. 92 (C.M.A.1979), the Court terminated the rule promulgated in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), regarding speedy review at the command level of the record of conviction of an accused ordered into post–conviction confinement or placed under other significant restraint. A perceived ambiguity in the *Banks* opinion has resulted in different applications of its precept by different service appellate tribunals. *Compare United States v. Brewer*, 9 M.J. 509 (A.F.C.M.R. 1980), certificate for review filed, 9 M.J. 16 (C.M.A.1980), *with United States v. Figueroa*, 8 M.J. 802 (N.C.M.R.1980), certificate for review filed, 9 M.J. 3 (C.M.A.1980). As authorized by Article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2), the Judge Advocate General of the Navy has certified two questions to this Court respecting the correctness of the application of *Banks* by the Court of Military Review in this case.[1] (8 M.J. 178).

Writing for this Court in *Banks*, Judge Perry reviewed the necessity for continua-

---

1. Other certificates that raise similar questions have been filed. *See United States v. Harris*, 9 M.J. 117 (C.M.A.1980); *United States v. Jack-* *son*, 9 M.J. 42 (C.M.A.1980). The Court has also granted a petition on this issue. *United States v. Cano*, 9 M.J. 30 (C.M.A.1980).

tion of the presumption postulated in *Dunlap* that an accused is prejudiced if, following conviction, he has been continuously confined or otherwise significantly deprived of his freedom and final action on his case is taken at the command level more than 90 days thereafter. He determined that changes in courts–martial procedure since *Dunlap* made continuation of the presumption inappropriate. Accordingly, he concluded that it should no longer obtain.

Three passages in Judge Perry's opinion allude to the time the *Dunlap* presumption would be inoperative. In the first, Judge Perry said:

[A]pplication of the [*Dunlap*] rule to cases such as are included in the certified question [2] shall not be required *from and after the date of this decision.*

7 M.J. at 93 (emphasis supplied). The second and third passages appear in the penultimate paragraph of the opinion. The first sentence of the text, which sets out the Court's affirmative answer to the certified question, includes footnote 3, where Judge Perry stated that "any announced change in the law must be prospective." *Id.* This sentence upheld the Court of Military Review's application of the *Dunlap* presumption "to the instant case." The second sentence of the text particularized the prospective nature of the decision and declared that "cases tried subsequent to this opinion . . . . will be tested for prejudice. *See United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973)." *Id.* at 93–94. *Gray* typified the rule that prevailed prior to promulgation of the *Dunlap* presumption of prejudice.

Here, the accused was placed in post–conviction confinement on March 5, 1979. Action by the supervisory authority was accomplished on June 4, 1979. Thus, the interval between post–conviction confinement and final command level review was 91 days. Under the *Dunlap* rule, as applied to the supervisory authority's review of a spe-

cial court–martial conviction,[3] determination of the timeliness of the review had, therefore, to start with the presumption that the delay was prejudicial to the accused. However, the Court of Military Review refused to apply the presumption. It construed the *Banks* statement that *Dunlap* would be inoperative as to "cases tried subsequent to" promulgation of the opinion as merely "an inadvertent use of a phrase normally reserved for rule changes that affect the conduct of the trial itself," and disregarded it as not indicative of the "real intent of the Court." *United States v. Johnson*, NCM 79–1195 (unpublished) (N.C. M.R. Nov. 6, 1979). The court also disregarded the footnote statement that "any announced change in the law must be prospective." 7 M.J. at 93 n. 3. That left it with the first statement in *Banks*, specifically that "application of the [*Dunlap*] rule . . . shall not be required *from and after the date of this decision*," which it construed to terminate the *Dunlap* presumption, notwithstanding that final command action had been completed before publication of *Banks* on June 18, 1979.

■ Neither party to a lawsuit has a vested right in existing rules of evidence, but a retroactive change of an evidentiary rule which "alters . . . [an accused's] situation to his disadvantage," is impermissible. 16A C.J.S. Constitutional Law § 435. *See Government of Virgin Islands v. Civil*, 591 F.2d 255 (3d Cir. 1979). Since final action on the accused's conviction occurred on the 91st day after imposition of post–conviction confinement, a rule that directs disregard of the presumption of prejudice already inherent in that action would raise a serious question whether it violates the constitutional prohibition against *ex post facto* change in the criminal law. U.S.Const. art. I, § 9, cl. 3.

■ As *Banks* twice stressed that termination of the *Dunlap* presumption was to be

---

2. Cases encompassed by the certified question were not specified, but, obviously, in the *Banks* case, the final command action had been completed long before the date of the Court's decision.

3. *See United States v. Brewer*, 1 M.J. 233 (C.M. A.1975).

prospective, understandably it did not consider whether retroactive disregard of a presumption which had become fully operative under previous law would violate the Constitution. However, a number of cases in the posture of *Banks* were pending in this Court. After promulgation of the *Banks* opinion, the Court acted in these cases; in each, it applied the *Dunlap* presumption: *United States v. Terry L. Johnson*, 7 M.J. 473 (C.M.A.1979); *United States v. Mosley*, 7 M.J. 209 (C.M.A.1979); *United States v. Tucker*, 7 M.J. 209 (C.M.A.1979); and *United States v. Sawyer*, 7 M.J. 195 (C.M.A.1979). Broadly viewed, those cases imply that the Court construed *Banks* as not terminating the *Dunlap* presumption in a case in which command level review was final before publication of the *Banks* opinion. So viewed, the Court of Military Review erred in its determination that the *Dunlap* rule did not apply to this accused's case. Arguably, however, the successor cases may be viewed as indicating only that they were decided as they were because they were pending before the Court at the time of promulgation of *Banks*. From that standpoint, they would not necessarily be determinative of this case, which was docketed almost 6 months after publication of *Banks*. (8 M.J. 178).

*Banks* declared that the end of the *Dunlap* presumption "must be prospective"; the decision in the case affirmed application of the presumption to a determination of the timeliness of command action that was final at the time of publication of the opinion. Had the opinion rested on that declaration and decision, it would have left open to doubt whether the *Dunlap* rule would also apply to a case in which the accused had been under significant post–conviction restraint, but the presumption of prejudice was still inchoate because more than 90 days from imposition of restraint had not yet elapsed. In my opinion, Judge Perry's final comment on the presumption laid that doubt to rest–*Dunlap* would be inoperative only as to "cases tried" after *Banks*. Thus, he assured every accused already subject to post–trial restraint sufficient to start the *Dunlap* clock running that he would not be disadvantaged by the *Banks* opinion; that he would be assured appellate consideration of the timeliness of the command level review of his conviction with the benefit of the *Dunlap* presumption, regardless of whether the full 90–day period had expired or some time yet remained to complete the period. In so doing, Judge Perry granted to accused the same sort of reasonable grace period for termination of the *Dunlap* rule that the Court had earlier granted to the Government on the imposition of the rule. *United States v. Slama*, 1 M.J. 167 (C.M.A.1975). I, therefore, answer in the affirmative the first certified question, which, in substance, asks whether the Court of Military Review erred in disregarding the *Dunlap* rule in its determination of the timeliness of the supervisory authority's action on the accused's case. I also answer in the affirmative the second question, which asks, in substance, whether the *Dunlap* rule applies to a case in which the accused was placed in post–conviction restraint prior to June 18, 1979, the date of the *Banks* decision, but final action on the conviction was not taken by command until after that date.

My answer to the first certified question does not, itself, require that the decision of the Court of Military Review be set aside and the charges dismissed, as in *Banks*. The 90th day of the accused's post–conviction confinement fell on a Sunday. The supervisory authority acted the next day. In *United States v. Nichols*, 2 U.S.C.M.A. 27, 36, 6 C.M.R. 27, 36 (1952), the Court noted that the Uniform Code of Military Justice "contains no provision for eliminating holidays and Sundays in computing periods of time" during which various courts–martial actions are required to be taken. Remarking on the fact that "[i]n many military situations Sundays and holidays are not considered days of rest," the Court concluded that a Sunday and a holiday that fell within the 5–day period that elapsed between service of charges upon the accused and the day of trial were not excludable, and, therefore, bringing the accused to trial after that period did not

violate Article 35, UCMJ, 10 U.S.C. § 835.[4] *Nichols* favored adoption of the rule in the Federal criminal civilian courts which excludes Sundays and holidays that fall in a time period less than seven days,[5] but the Court suggested it lacked authority to "impose it as a matter of law." *Id.*

Subsequent to *Nichols*, the Court often turned to the Federal rules of practice to fill an interstice in military law.[6] I need not consider whether the particular rule at issue in *Nichols* has survived the later cases. *Nichols* acknowledged that exclusion of a Sunday or holiday from a time period could properly be effected "by statute or rule." *Id.* The *Dunlap* rule was promulgated by this Court. Rule 32(a), Rules of Practice and Procedure of this Court (4 M.J. CXVII), provides, in material part, for including in:

> any period of time prescribed ... by order of the Court ... [t]he last day of the period ... unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday, nor a holiday.

As Rule 32(a) falls within a division of the Rules of Practice and Procedure titled "PRACTICE BEFORE THE COURT," arguably its application should be circumscribed by the caption, and the rule should not be applied to a *Dunlap* period which is operative outside proceedings in this Court. However, it cannot be gainsaid that the *Dunlap* presumption emanated from the Court and, consequently, it should be, and I conclude that it is, freighted with the general rule prescribed by the Court for computations of time. Resultantly, final command action on the accused's case was timely, and the *Dunlap* presumption of prejudice

was inoperative. Considered without the presumption, the evidence as to the course of command review shows no fair risk of prejudice to the accused.

As their separate opinions indicate, my Brothers have different views as to the meaning and effect of *Banks*. We all agree, however, that the convening authority's action was timely, and, therefore, we affirm the decision of the United States Navy Court of Military Review.

EVERETT, Chief Judge (concurring in the result):

Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810, commands that when a service member "is placed in arrest or confinement prior to trial, immediate steps shall be taken to ... try him or to dismiss the charges and release him." To effectuate this mandate, this Court created "a presumption of an Article 10 violation ... when pretrial confinement exceeds three months." *United States v. Burton*, 21 U.S. C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971).

Without deciding whether action of the convening authority is part of a "trial," the Court later concluded that Congress also was concerned that such action by the convening authority be taken promptly. *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Confronted with "many cases where a convening authority's action has been inordinately delayed," *id.* at 140, 48 C.M.R. at 756 (Duncan, C. J., dissenting), we ruled that "a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal

---

**4.** At the time of *United States v. Nichols*, 2 U.S.C.M.A. 27, 6 C.M.R. 27 (1952), Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835, read somewhat differently from the present article. The part that was carried over to the current article reads as follows, with word changes underlined:

> In time of peace no person may, against his objection, be brought to trial ... in a general court–martial case within a period of five days after the service of charges upon him or in a special court–martial within a period of

three days after the service of the charges upon him.

**5.** Fed.R.Crim.P. 45(a).

**6.** *United States v. Weaver*, 1 M.J. 111, 117 (C.M.A.1975); *United States v. Nivens*, 21 U.S. C.M.A. 420, 423, 45 C.M.R. 194, 197 (1972); *United States v. Knudson*, 4 U.S.C.M.A. 587, 590, 16 C.M.R. 161, 164 (1954); *United States v. Hagelberger*, 3 U.S.C.M.A. 259, 263, 12 C.M.R. 15, 19 (1953).

and final action within 90 days of the date of such restraint after completion of trial." Relief was given to Dunlap himself; but otherwise the rule of the case was applied prospectively "30 days after the date of" the *Dunlap* opinion. *Id.* at 138, 48 C.M.R. at 754.

Five years later, over the dissent of Judge Cook, the Court retreated from the application of this 90–day "presumption" because, as we noted in *United States v. Banks*, 7 M.J. 92, 93 (C.M.A.1979), "convicted service persons now · enjoy protections which had not been developed when *Dunlap* was decided." However, the principal opinion did not make completely clear whether the *Dunlap* presumption would still be applied to cases that were at that time in various stages of post–trial review. The certified question in *Banks* "asked ... whether ... *Dunlap* ... required automatic dismissal of charges in this case 'where the accused received a fair trial free from error, was found guilty beyond a reasonable doubt and where the delay of 91 days in the review of the conviction by the convening authority caused him to suffer absolutely no prejudice.'" The Court responded that "inflexible application of the rule to cases such as are included in the certified question shall not be required from and after the date of this decision." *Id.* In a footnote, we stated:

> Thus in a case such as this, where the Judge Advocate General asks whether the Court of Military Review correctly applied the controlling law in the appellant's favor, an affirmative answer to the question terminates any legal basis for Government relief and any announced change in the law must be prospective.

*Id.* n.3. Because of the wording of the certified question, the principal opinion answered it in the affirmative but at the same time ended with the announcement that, "in cases tried subsequent to this opinion, applications for relief because of delay of final action by the convening authority will be tested for prejudice." *Id.* at 93–94. Despite this terminal utterance, the Navy Court of Military Review concluded in the case at bar that the rule of *Dunlap* had

expired and need no longer be reckoned with for purposes of appellate review.

The Court's unwillingness to continue the rigid presumption adopted in *Dunlap* is understandable. After conviction, an accused is in an entirely different position than he occupied previously. As stated in *Ross v. Moffitt*, 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341, 351 (1974):

> But there are significant differences between the trial and appellate stages of a criminal proceeding. The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt. To accomplish this purpose, the State employs a prosecuting attorney who presents evidence to the court, challenges any witnesses offered by the defendant, argues rulings of the court, and makes direct arguments to the court and jury seeking to persuade them of the defendant's guilt.
>
> By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all.

Because of the different situation that prevails after conviction, the defendant's entitlement to counsel may be reduced at that stage. *Cf. Ross v. Moffitt, supra.* And his right to bail may be more limited than before conviction. 18 U.S.C. § 3148. Furthermore, the "speedy trial" guarantee of the Sixth Amendment would not appear

to include a right to speedy disposition after appeal. Thus, while the importance of prompt appellate review of a conviction should not be deprecated, the constitutional and statutory bases for insisting on such action are less obvious than for compelling speedy trials. Moreover, after trial, the record has been made and there is no possibility of loss of witnesses due to delay, as may occur with delays before trial. Accordingly, delay in disposing of an appeal does not threaten to affect an outcome in the way that delay in trial may do. Therefore, a sound basis exists for abrogating a rule which requires reversal of convictions because the appellate review has exceeded some predetermined maximum time, even though the accused's guilt has been established by competent evidence beyond a reasonable doubt and no possibility of prejudice can be perceived.

On the other hand, much can be said for the view expressed by Judge Cook in his *Banks* separate opinion concurring in the result. The very difficulty in demonstrating that prejudice to an accused has resulted from delays in completing the action provides a temptation for a convening authority to lapse into dilatory habits in completing his action. Thus, the demise of the *Dunlap* presumption may produce a return to the intolerable delays that persuaded the Court to adopt the presumption in the first place. Indeed, to help prevent such an occurrence, the Court should be vigilant in finding prejudice wherever lengthy post–trial delay in review by a convening authority is involved. Moreover, if the problem of post–trial delay occurs frequently in the future, the Court will have to consider resurrecting the *Dunlap* presumption of prejudice.

If, however, the *Dunlap* presumption is not to survive—as the majority decided in *Banks*—there should be a swift execution, rather than a lingering death. Generally an appellate court applies "the law in effect at the time it renders its decision." *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974). Moreover, from the outset, *Dunlap* has been an exception to the harmless error principle embodied in Article 59(a), UCMJ, 10 U.S.C. § 859(a). It imposes on military justice the social cost of freeing accused persons whose guilt has been proved in fair trials beyond reasonable doubt. Such a burden should not be borne without some pressing reason.[1]

In creating its presumption of prejudice *Dunlap* allowed a 30–day grace period before it became applicable. It has been suggested that, on a principle of reciprocity, the presumption likewise should be terminated on a prospective basis. Such an argument misses its mark. In creating the presumption of prejudice, the Court was justifiably concerned with the reliance by convening authorities on preexisting law. For example, a convening authority might have taken more than 90 days to deliberate on his proposed action because he was unaware any deadline existed. To have applied *Dunlap* retroactively would have penalized such reliance.

On the other hand, if the termination of the *Dunlap* principle takes place retroactively and applies to all cases for which appellate action is pending, no comparable disruption of the expectations and reliance of appellants will have taken place. It is difficult to imagine an act or omission on the part of a convicted accused that would be taken in reliance on the rule that a convening authority must act within 90 days from the end of trial. Of course, if an appellant is undergoing a sentence to post–trial confinement after an illegal conviction, delay in completing action by the convening authority may delay his ultimate vindication and release. However, in such an instance, the primary cause of the continued imprisonment is the unjust conviction, rath-

---

1. Indeed, quite recently, in a somewhat analogous situation, the Supreme Court rejected an attempt to impose on federal criminal law administration the social cost of acquittals of guilty persons that would have resulted from a proposed extension of the supervisory powers of the federal courts; and yet the law enforcement officials had utilized flagrant tactics. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

er than the delay in discovering that the injustice has occurred.

Recently, the Supreme Court has reemphasized that, in determining whether a new constitutional rule of criminal procedure is to be applied prospectively, the foremost–and often decisive–factor is the purpose of the rule. *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980). Only when the purpose of the rule does not clearly favor retroactivity or prospectivity need attention be directed to the extent of reliance by law enforcement authorities on the old standard and the effect on the administration of justice of retroactive application of the new standard.

If a parallel analysis is applied in the case at bar, the conclusion is that *Dunlap's* presumption of prejudice should not be applied to any case in which appellate review has not been completed. Nothing in the purpose of the new rule favors prospectivity. Instead, to the extent that the purpose of *Banks* is to remove an artificial limitation which has no specific constitutional or statutory basis, is at odds with the harmless error principle established by Article 59(a) of the Code, and provides a possible windfall for persons proved guilty of serious crimes after fair trials, retroactivity is called for. Furthermore, no one has relied on the 90-day presumption in such a way that it would be unfair to change it. Finally, no adverse effect on the administration of justice can be foreseen from abolishing the presumption retroactively. To the contrary, the effect should be the salutary one of avoiding the reversal of convictions and dismissal of charges when service members have been found guilty in fair trials by courts–martial. Of course, if the abolition of the *Dunlap* presumption presages a return to the inordinate delays of yesteryear in accomplishing the action of convening authorities, that development will take place without regard to whether the presumption was abolished retroactively or only prospectively.

The contention is made that to abolish retroactively the *Dunlap* presumption of prejudice violates the constitutional proscription of *ex post facto* laws. U.S.Const. art. I, § 9, cl. 3. Of course, since we are not dealing with a statute, there is some question about the applicability of this limitation. Appellate decisions often have retroactive effects, even in criminal cases; and such retroactivity–even when it concerns elements of a crime–has not been viewed as improper. Furthermore, retroactive changes in the mode of trial or the rules of evidence–even when accomplished by statute–generally do not violate the ban on *ex post facto* laws. *Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925). If statutory changes in the procedure for imposing a death penalty do not contravene Article I, section 10 of the Constitution, *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), it is unlikely that retroactive abolition of the *Dunlap* presumption will violate Article I, section 9.

The principal opinion concludes that when Sunday is the 90th day, the *Dunlap* presumption contemplated a day of grace. In view of the provisions of the Federal Rules of Criminal and Civil Procedure, as well as our own Rules, I accept this interpretation.

FLETCHER, Judge (concurring in the result):

I concur in the result but do not, under the facts of this case, reach the question of the effect of *United States v. Banks,* 7 M.J. 92 (C.M.A.1979), on the law as set out in *Dunlap v. Convening Authority,* 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974).

The law before *Dunlap v. Convening Authority, supra,* applied by the Court in *United States v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973), and *United States v. Timmons,* 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973), the law announced in *Dunlap v. Convening Authority, supra,* and the statements by the majority in *United States v. Banks, supra,* under the facts of this case lead to the single conclusion: The Government was diligent.